IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN HORTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:13-CV-467 (MTT) |
| ) | |
| CITY OF MACON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Plaintiff John Horton has filed a 42 U.S.C. § 1983 suit against the City of Macon ('the City") alleging violations of procedural due process with regard to the termination of his employment as a Macon, Georgia police officer. (Doc. 1). The City has moved for summary judgment. (Doc. 19). For the reasons stated below, the motion is **GRANTED**.

### I.   BACKGROUND

The following facts are undisputed. On April 30, 2012, Horton went with his wife and daughters to Hair and Nails 2000 in Macon for his wife's appointment with stylist Laurie Starley. (Docs. 19-2, ¶ 1; 19-5 at 69; 25-1 at 1). Starley later filed a complaint with the Macon Police Department ("MPD") accusing Horton of exposing himself to her during that visit. (Docs. 19-2, ¶ 1; 19-3 at 25, 49-50; 25-1 at 1). As a result of this allegation, Horton was interviewed by Internal Affairs on May 17, during which he consistently maintained his innocence. (Docs. 19-2, ¶ 4; 19-3 at 26-38; 25-1 at 2). On May 18, Horton was charged with public indecency. (Docs. 19-2, ¶ 5; 19-7; 25-1 at 2; 28-1, ¶ 1).

Also on May 18, MPD issued a Notice of Pending Disciplinary Action to Horton alleging violations of two rules:  (1) City of Macon Personnel Administrative Guideline #807 ("Guideline 807"), Section II.C(12),[1] and (2) Macon Police Department General Order #660, § 1.04 ("General Order 660").[2]  (Docs. 19-2, ¶¶ 7-8; 19-3 at 39-40; 25-1 at 2; 28-1 ¶¶ 2, 4-6).  The "reason for this [disciplinary] action" was Horton's arrest.  (Docs. 19-3 at 40; 28-1, ¶ 3).  On May 24, Horton was told his termination was final.  (Docs. 19-2, ¶ 14; 19-3 at 43; 25-1 at 2; 28-1, ¶ 7).

Horton's lawyer, Lars Anderson, responded to the Notice of Pending Disciplinary Action by letter dated May 24.  (Doc. 19-3 at 41-42).  Anderson wrote that while Horton admitted his arrest, he denied that he had exposed himself to Starley.  (*Id.*).  Anderson argued that an arrest, by itself, was not a violation of either Section II.C(12) of Guideline 807 or General Order 660 because an arrest "does not constitute criminal, infamous, dishonest, immoral and/or notoriously disgraceful conduct or other conduct prejudicial to the City of Macon."  (*Id.*).  He further argued that a "bedrock of American jurisprudence is that an individual is innocent until proven guilty," so the arrest alone should not constitute conduct for which his employment could be terminated.  (*Id.* at 42).

---

[1] "Disciplinary action may be taken for any recognizable offense against the employer-employee relationship.  Causes for adverse action run the entire gamut of offenses against this relationship, including inadequate performance of duties and improper conduct on or off the job.  The following are some of the reasons[] which might be cause for disciplinary action: … Criminal, infamous, dishonest, immoral or notoriously disgraceful conduct or other conduct prejudicial to the City."  (Doc. 19-3 at 6).

The Notice actually lists Section 11, but this is clearly a mistake because the text of Section II is quoted.

[2] "§ 1.04 Conformance to Laws.
  A. Employees shall obey all laws of the United States and of any state and local jurisdiction in which the employees are present.
  B. A conviction of the violation of any law shall be prima facie evidence of a violation of this section….
  C. Findings and disciplinary action by the Department under charges for violations of this section shall be independent of any proceedings under criminal law."
(Doc. 19-3 at 13).

An Administrative Law Judge convened a hearing on Horton's termination on October 10, 2012.  (Docs. 19-2, ¶ 16; 19-3 at 45-97; 25-1 at 2; 28-1, ¶ 10).  Horton's primary defense was that he "did not commit the act" and thus did not commit "an act of criminal, infamous, dishonest, immoral, and notorious disgraceful conduct or any other conduct[] which prejudices the City."  (Doc. 19-3 at 48).  Much of the testimony and argument at the hearing addressed whether in fact Horton exposed himself.  Also, as discussed in more detail below, the parties adduced evidence about and provided argument on the application of Section IX of Guideline 807, which addresses the disciplinary options for employees who have been charged with committing crimes.

In his November 20 decision, the ALJ found that Horton was "not guilty" of violating Section II.C(12) of Guideline 807 or General Order 660.  (Docs. 19-2, ¶¶ 19-20; 19-3 at 120, 123; 25-1 at 3; 28-1, ¶¶ 13, 15).  He recommended that Horton be suspended without pay pursuant to Sections IX.D and IX.G of Guideline 807.  (Docs. 19-2, ¶ 21; 19-3 at 122; 25-1 at 3; 28-1, ¶¶ 13, 16).  Section IX.D states that "[i]f the conduct resulting in the criminal charges does not relate[] directly to the duties of the position held, but is of a serious and aggravated nature so as to interfere with the employer-employee relationship or embarrass the city, the employee may be suspended pending disposition of the charges."  (Doc. 19-3 at 11).  Section IX.G states that "[i]f the criminal charges are disposed of in favor of the employee, he/she shall be reinstated with back pay from the date of suspension…."  (*Id.* at 12).  Finally, the ALJ advised the parties that they had ten days to appeal his decision.  (*Id.* at 122).

On December 3, the City filed its appeal.  (Docs. 19-2, ¶ 26; 19-3 at 125-26; 25-1 at 3).  The City first argued that the ALJ applied an incorrect evidentiary standard when

he concluded that Horton was "'not guilty of violation of Conformance to Laws by the mere fact that he was arrested and charged with violation of a law' and in asserting that 'we are all innocent until proven guilty.'" (Doc. 19-3 at 125) (footnote omitted).  The City argued, based on Section VI.B(8) of Guideline 807, that the City's burden is to prove by substantial evidence that the personnel action is warranted. (*Id.*).  "'Substantial evidence is defined in this guideline as that degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as adequate to support a conclusion that the matter asserted is true.'" (*Id.*, quoting Guideline 807, Section VI.B(8)).  Second, the City argued that termination, rather than suspension as found by the ALJ, was authorized under Section IX.C of Guideline 807.  (Docs. 19-2, ¶ 26; 19-3 at 126; 25-1 at 3).  Section IX.C states that "[n]ormally, if the conduct resulting in the criminal charges is also an offense against the employment relationship with the City, the appropriate disciplinary action shall be instituted and the employee discharged if appropriate." (Doc. 19-3 at 11).

In a letter brief in response to the City's appeal, Horton argued first that the City had not proven he had exposed himself:

> Thus, the question on appeal is whether or not "substantial evidence" was presented to the ALJ to support the conclusion that Sergeant Horton failed to obey the laws of the United States, the State of Georgia, and the City of Macon.  As set forth in the ALJ's Findings Of Fact, complete with citations to the Transcript, the City *did not* present substantial evidence that Sergeant Horton committed the act of public indecency on April 30, 2012.

(*Id.* at 130).  Horton then reviewed the evidence which he claimed supported the ALJ's conclusion. (*Id.* at 130-31).

Horton next addressed the City's contention that Section IX.C authorized the City to terminate Horton as a result of his arrest. (*Id.* at 131-32). While he acknowledged that Section IX.C allows termination, he argued that termination "was not appropriate under these particular circumstances." (*Id.* at 131). Instead, he contended that the ALJ properly found that suspension, pursuant to Section IX.D,[3] was appropriate because the criminal charges did not relate directly to his duties. (*Id.* at 131-132). Horton argued that regardless of which particular subsection of Section IX is considered, the ALJ properly found that the appropriate discipline was suspension without pay until the resolution of the criminal charge against him. (*Id.* at 132). Finally, Horton argued that the City's appeal was untimely. (*Id.*).

The Mayor reversed the ALJ, finding that "the substantial evidence of misconduct" constituted a violation of General Order 660 and that Section IX.C of Guideline 807 allowed the Police Chief to terminate Horton's employment. (*Id.* at 135).

In an effort to appeal the Mayor's decision, Horton filed two petitions for a writ of certiorari. (Docs. 19-2, ¶¶ 30-33; 25-1 at 4). In his petitions, he argued that he had been denied due process, that the Mayor's decision was not supported by substantial evidence, that the stated basis for the Mayor's decision was improper and inadequate, and that the Mayor's decision was inappropriate and improper under the City's personnel policy. (Doc. 19-6 at 104-05). Horton dismissed the first petition without serving the City with a copy of the petition. (Docs. 33; 34). He served his second petition on the City but then voluntarily dismissed the petition before any resolution on the merits. (Docs. 19-2, ¶¶ 32-33; 25-1 at 4).

---

[3] Horton cites Section IX.C ¶ B, which does not exist, but he quotes Section IX.D.

The charges were resolved in Horton's favor on October 28, 2013.[4]  (Doc. 28-1, ¶ 25).

## II.  DISCUSSION

**A.  Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly

---

[4] At oral argument, counsel advised the Court that the charge was nolle prossed.  (Doc. 32, hearing at 9:42.  The Court has cited the timestamp from the audio recording of the hearing.).

probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Analysis

#### 1. Procedural due process

##### a. Constitutionally adequate process

Horton asserts a procedural due process claim under the Fourteenth Amendment.[5] (Doc. 1, ¶¶ 26-28). "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). The City argues that Horton cannot establish the third element because he received constitutionally adequate process as a matter of law. (Doc. 19-1 at 8).

Constitutionally adequate process requires notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("[A] public employee is entitled to oral or written notice of the charges against him, an explanation

---

[5] He also asserted a claim under the Fifth Amendment. (Doc. 1, ¶¶ 26-28). However, as the City points out and Horton concedes, the Fifth Amendment applies to the federal government, and this case only involves state action. (Docs. 19-1 at 7; 25 at 5 n.1). Therefore, summary judgment is **GRANTED** for any claims asserted pursuant to the Fifth Amendment.

of the employer's evidence, and an opportunity to present his side of the story."). The City argues that it is undisputed that Horton received oral and written notice of the charges against him as well as copies of the accuser's statements prior to his appeal hearing and that he had ample opportunity to present, and did present, his side of the story. (Doc. 19-1 at 8-9).

Horton first contends that his right to procedural due process was violated because his notice was inadequate and his hearing was meaningless. (Doc. 25 at 6). He asserts that the notice he received stated that "the specific reason given for [his] termination was that he had been *arrested* for public indecency." (*Id.*) (emphasis added). He argues that when the Mayor reversed the ALJ's decision because there was "substantial evidence" that Horton actually committed the crime, the Mayor changed the reason for his termination, and Horton did not have an opportunity to respond to this "entirely new reason" for the termination. (Docs. 19-3 at 134-35; 25 at 6-7).

This argument is without merit. The City's Notice of Pending Disciplinary Action gave two bases for Horton's termination: First, he had violated Section II.C(12) of Guideline 807, which covers "criminal, infamous, dishonest, immoral or notoriously disgraceful conduct or other conduct prejudicial to the City." (Doc. 19-3 at 39). Second, he had violated MPD General Order 660 which concerns "conformance to laws." (*Id.* at 40). The notice referenced Horton's May 18 arrest for public indecency as the reason for the charges. (*Id.*). Clearly, Horton had adequate notice of the allegations against him.

Horton, through his lawyer, immediately made clear his defenses to the City's disciplinary charges—he denied he exposed himself and argued that a mere arrest was not sufficient grounds for termination. (*Id.* at 41-42). At the administrative hearing, the ALJ took considerable evidence and heard lengthy argument on both defenses. (*Id.* at 47-97). The question of the appropriate sanction for Horton's arrest—suspension or termination—led to both testimony and argument about Section IX of Guideline 807, which addresses the appropriate discipline when an employee is charged with a criminal offense. (*Id.* at 11, 62, 67-68, 71).

Although he found Horton "not guilty," the ALJ addressed the question of the appropriate discipline for his arrest. (*Id.* at 120-22). Not surprisingly, given the focus on Section IX at the hearing, the ALJ relied on Section IX. (*Id.* at 121-22). He concluded that Sections IX.D and IX.G provided the appropriate punishment, and he recommended that Horton be suspended without pay until the criminal charge was resolved. (*Id.* at 121-22).

In its appeal, the City argued that the ALJ applied the wrong evidentiary standard when he found Horton "not guilty." (*Id.* at 125-26). Pursuant to Guideline 807, the question was not whether his guilt had been proven but whether there was substantial evidence that Horton had exposed himself. (*Id.*). There was, the City argued, and the appropriate discipline was termination pursuant to Section IX.C. (*Id.* at 126).

In his response to the appeal, Horton argued that "the City had not presented *substantial evidence* to find that Sergeant Horton was guilty of violating [MPD] General Order concerning Conformance To Laws." (*Id.* at 129) (emphasis added). With regard to the City's argument that the ALJ should have relied on Section IX.C, Horton argued

that the ALJ properly found that suspension pursuant to Section IX.D was appropriate because the City failed to prove to the satisfaction of the ALJ that his alleged public indecency met the elements of Section IX.C. (*Id.* at 131-32).

When the Mayor reversed the ALJ, he addressed directly the parties' contentions regarding the sufficiency of the evidence and the application of Section IX.C:

> City of Macon Personnel Administrative Guideline #807 specifically provides in Section IX.C that if the conduct resulting in the criminal charge is also an offense against the employment relationship with the City, the appropriate disciplinary action shall be instituted and the employee discharged, if appropriate. In this case, the *substantial evidence* of criminal misconduct constituted an offense against the employment relationship of a police officer for the City, specifically subsection 1.04 of General Order #660.

(*Id.* at 135) (emphasis added).

Given this, it is clear that the Mayor did not, as Horton argues, base his decision on the "entirely new reason that there was substantial evidence that Mr. Horton actually committed the crime of public indecency." (Doc. 25 at 6). When the Mayor agreed that there was substantial evidence of Horton's misconduct, he was addressing the precise issue that Horton had raised throughout the matter—that the evidence did not support the charges against him. Both parties, in their appeal briefs, *agreed* that the issues before the Mayor were whether there was substantial evidence that Horton had exposed himself and what the appropriate discipline was pursuant to Section IX. (Doc. 19-3 at 125-26, 131-32). In short, the Mayor's conclusion that substantial evidence supported Horton's termination was not an "entirely new reason" for firing Horton.

In its reply brief, the City primarily addresses an argument that, as far as the Court can tell, Horton never makes. The City seems to think Horton argues that the

Mayor changed the reason for his termination when he applied Section IX.  (Doc. 28 at 2).  But Horton does not make that argument, and in any event, that clearly is not what happened.  Throughout the proceedings, the City contended that Horton's arrest for public indecency violated Section II.C(12) and General Order 660.  Section IX became relevant, and indeed was embraced by Horton's lawyer and the ALJ, as the parties and the ALJ addressed the appropriate discipline for Horton's arrest.  Moreover, even if the precise section of Guideline 807 allegedly violated had changed, the substance of the allegations never changed.  The basis for the disciplinary action was always Horton's alleged public indecency, regardless of the particular provision of the personnel policy that provided the vehicle for the disciplinary charge.

  Next, Horton argues that his due process rights were violated when the Mayor "shifted the burden of proof from the Police Chief (who was required by the Guideline to justify Mr. Horton's termination with substantial evidence …) to Mr. Horton (by requiring Mr. Horton to establish that his termination was an abuse of the Police Chief's discretion)."  (Doc. 25 at 8).  Horton gives little attention to this argument, and he cites no supporting authority.  The City does not address the argument at all.  The factual basis for the argument appears to be paragraph six of the Mayor's letter reversing the ALJ:  "The office of the Chief of Police is vested with the authority to make disciplinary decisions which should not be reversed, absent abuse of discretion, which is not present in this case."  (Doc. 19-3 at 135).  Nowhere else in the record is there any mention of an abuse of discretion standard, and it is not clear why this language is in the Mayor's letter.  As Horton correctly points out, the burden of proof at administrative hearings lies with department heads, who must prove by substantial evidence that the

personnel action is warranted. (Doc. 19-3 at 10). It certainly makes little sense that an employee who has prevailed at an administrative hearing where the department head had the burden of proof would have to shoulder on appeal the burden of proving the department abused his discretion. If the Mayor had placed on Horton the burden of proving the Police Chief abused his discretion, Horton would have a plausible argument that the Mayor erroneously applied the City's personnel policy standard. But factually that is not what happened. The Mayor clearly found that substantial evidence supported Horton's termination. Paragraph 6 may be a mystery, but it is not a mystery that caused a due process violation.

Finally, Horton argues that the Mayor improperly heard the appeal because (1) Section VIII of Guideline 807 only allows an appeal if the ALJ recommends or upholds a termination, and (2) the appeal was not timely. (Doc. 25 at 8). With regard to the first argument, Horton's interpretation of the personnel policy is suspect. Section VIII, which is titled "Review and Appeal of ALJ's *Report on Terminations*," provides that both the affected employee and the City can "request an appeal to a termination." (Doc. 19-3 at 11) (emphasis added). Horton somehow reads this to mean that the City can only appeal if the ALJ upholds the City's decision to terminate an employee. That makes no sense; clearly the City would have no reason to appeal the ALJ's affirmance of a termination decision. The only reasonable reading of the provision is that it provides the procedures for appeal in a termination proceeding, which this was. Further, the ALJ's decision was a "Report on Terminations." That he recommended suspension rather than the termination imposed by the Police Chief did not change the fact that this was a termination proceeding. This is consistent with the preceding

section of Guideline 807[6] which provides that there is no appeal of an ALJ's decision except in termination proceedings. (*Id.* at 10-11). The clear intent of both Section VIIIs is to provide that when the City terminates an employee, the ALJ's decision affirming or reversing that action can be appealed by the losing party. Thus, it is not surprising that the ALJ's decision advised the City that it could appeal. (*Id.* at 122).

With regard to Horton's argument that the City's appeal was untimely, the record is not entirely clear, but the Court will assume that the City's appeal was one day late. However, the Mayor's consideration of the appeal notwithstanding its presumed untimeliness does not constitute a due process violation. The United States Supreme Court has been clear that

> [t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, 426 U.S. 341, 349-50 (1976) (footnote omitted). Horton is not entitled to a procedurally correct decision in every respect, just a constitutional one.

In sum, the undisputed facts establish that Horton did not receive constitutionally inadequate process. He received appropriate notice and was provided ample opportunity to be heard. He fully availed himself of that opportunity. He adduced

---

[6] This section is also called Section VIII.

considerable evidence supporting his contentions that there was not substantial evidence that he exposed himself and that the appropriate sanction for the criminal charge was suspension rather than termination. When the City appealed, his lawyer vigorously argued Horton's contentions on both issues. Because he received adequate (actually far more than adequate) process, the City is entitled to summary judgment.

### b. Adequate state remedy

The City asserts that Horton's due process violation is incomplete because he did not take advantage of the adequate state remedies of certiorari or mandamus before filing his § 1983 suit. (Doc. 19-1 at 11-14).

"[A] procedural due process violation is not complete unless and until the State fails to provide due process. In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (internal quotation marks and citation omitted). Certiorari and mandamus can be adequate state remedies for a public employee whose employment has been terminated. *Cotton v. Jackson*, 216 F.3d 1328, 1331-33 (11th Cir. 2000).

"The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers…." O.C.G.A. § 5-4-1(a). "Thus, the first step in weighing whether a trial court properly can hear a petition for certiorari is to determine whether the petition is seeking review of a judicial or quasi-judicial action or merely an administrative one" because certiorari is only available

for judicial actions. *Laskar v. Bd. of Regents of Univ. Sys. of Ga.*, 320 Ga. App. 414, 416, 740 S.E.2d 179, 181 (2013).

> The basic distinction, under Georgia law, between an administrative and a judicial act by officers other than judges is that: "[A] quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken…. [T]he test is whether the parties at interest had a right under the law to demand a trial in accordance with judicial procedure."

*Cotton*, 216 F.3d at 1332 (alterations in original) (quoting *Mack II v. City of Atlanta*, 227 Ga. App. 305, 307, 357 S.E.2d 357, 359 (1997)).  "[C]ourts also consider whether the hearing officer 'was then required to examine and weigh the evidence and make a decision according to the law–to exercise discretion and judgment in application of the law … to a particular set of facts.'"  *Laskar*, 320 Ga. App. at 416-17, 740 S.E.2d at 182 (second alteration in original) (quoting *Rozier v. Mayor & Alderman of the City of Savannah*, 310 Ga. App. 178, 181, 712 S.E.2d 596, 598 (2011)).  Furthermore, a judicial action requires "two or more litigants.  An issue of law or fact must be joined by them, within the jurisdiction of the tribunal, with respect to property or some personal right in which the litigants are interested.  Its conclusion must be binding upon the parties until reversed or set aside in the manner provided by law for opening up judgments of courts."  *Id.* at 417, 740 S.E.2d at 182 (quoting *Se. Greyhound Lines v. Ga. Pub. Serv. Comm'n*, 181 Ga. 75, 83, 181 S.E. 834, 839 (1935) (emphasis omitted)).

Horton does not dispute that a decision by an ALJ followed by a proper appeal to the Mayor constitutes a quasi-judicial action.  Indeed, it is clear that the procedure contemplated by Guideline 807 has the necessary attributes of a quasi-judicial

proceeding. But for the same reasons Horton contends he was denied due process, he contends that the appeal to the Mayor was not a proper appeal. Therefore, he contends that the Mayor acted "ministerially" rather than in a quasi-judicial function, and thus, the writ of certiorari was not available. Specifically, he argues (1) that the Mayor changed the reason for his discharge and shifted the burden of proof to him and (2) that the appeal was untimely and, in any event, was not permitted by Section VIII of Guideline 807. (Doc. 25 at 9). Citing these same reasons, he further argues that even if the Mayor's decision was judicial, the Mayor lacked authority to act, and thus, the Mayor's decision to terminate him was void. (*Id.*).

To support these arguments, Horton relies on *Glynn County v. Waters*, 268 Ga. 500, 491 S.E.2d 370 (1997). In *Glynn County*, Waters, a department head for the county, was discharged by the county commission. *Id.* at 500, 491 S.E.2d at 371. The termination was contrary to law, however, because a county ordinance "unambiguously" vested exclusive authority for the discharge of department heads in the county administrator. *Id.* at 500, 502, 503, 491 S.E.2d at 371, 372. The county commission only had the power to approve or deny the county administrator's termination decisions, so the commission had acted on its own authority when it discharged Waters. *Id.* at 500-01, 503, 491 S.E.2d at 371, 372. In other words, because the county administrator had not discharged Waters, there was no termination decision for the commission to approve or deny. *Id.* The Georgia Supreme Court held that "[b]y discharging Waters on its own authority rather than limiting itself to a review of the disciplinary decision reached by the county administrator, the county commission purported to act ministerially rather than judicially." *Id.* at 503, 491 S.E.2d at 372. The court further held

that, even if the commission had acted judicially, its decision was void because it did not have authority to act under the ordinance. *Id.* Either way, certiorari was unavailable to review the decision of the commission. *Id.*

Thus, *Glynn County* simply illustrates that certiorari is not available when it is clear that the party or entity making the termination decision acted outside its authority, regardless of whether the decision was made judicially, quasi-judicially, or ministerially. Factually, that is not what happened here.

As discussed above, the Mayor did not change the reason for Horton's discharge, he did not shift the burden of proof to Horton, and Guideline 807 allowed the City to appeal the ALJ's decision to the Mayor. That leaves Horton's argument that the appeal was not proper and/or the Mayor's decision was void because the City's appeal was untimely. The Court again assumes that the appeal was one day late. Horton cites no authority for the proposition that the Mayor stepped outside his judicial function because he considered a late appeal. Presumably the Mayor, like any appellate court, could have refused to hear the late appeal. But the Court knows of no basis to conclude that when he heard the appeal over Horton's objection, his status as a participant in the City's quasi-judicial process changed.

Horton cites *Department of Transportation v. Rudeseal*, 156 Ga. App. 712, 276 S.E.2d 52 (1980), in support of his argument that an untimely notice of appeal renders the Mayor's decision void. (Doc. 25 at 9-10). *Rudeseal*, which dealt with the unique procedure of condemnation proceedings, does not reach nearly that far. To appeal the State's "declaration of taking" to the courts, a condemnee at the time had to file a timely notice of appeal to the superior court, which the condemnees in *Rudeseal* did not do.

*Id.* at 714, 276 S.E.2d at 53-54. For this particular type of appeal, the subject matter jurisdiction of the courts was "absolutely conditional" upon a timely notice of appeal. *Id.*, 276 S.E.2d at 53. The court even lacked jurisdiction to extend the time for filing a notice of appeal. *Id.* Thus, any action by the court was void. *Id.*, 276 S.E.2d at 53-54.

Clearly, the notice of appeal contemplated by Guideline 807 is not at all akin to the subject matter jurisdiction-critical notice of appeal in condemnation proceedings. There is no basis for concluding that the Mayor acted ministerially or that his decision was void simply because he heard a one-day-late appeal.

In short, the remedy of certiorari was available to Horton. He initiated but then abandoned this adequate state remedy, and thus his due process violation is incomplete. *See McKinney*, 20 F.3d at 1557.

### 2. Res judicata

In its brief, the City also argued that Horton's claims are barred by the doctrine of res judicata. (Doc. 19-1 at 14-16). The City argued that Horton had twice dismissed petitions of certiorari seeking review of the City's actions. (*Id.* at 14). Both petitions contended that the City had denied Horton due process. (Doc. 19-6 at 104-05). Citing O.C.G.A. § 9-11-41(a)(3), which provides that the filing of a second dismissal "operates as an adjudication upon the merits," the City argued that because Horton twice dismissed his certiorari petitions, res judicata bars this claim. (Doc. 19-1 at 15-16). In response to questioning by the Court at oral argument, the City informed the Court that Horton's first petition had never been served on the City. (Docs. 33, 34). The Court observed that this likely rendered that action void, and if so, the dismissal of that void action did not count as a dismissal for the purposes of § 9-11-41. (*Id.*). After oral

argument, counsel for the City conceded the point and abandoned its res judicata defense.  (*Id.*).  *See Garcia v. Virden*, 236 Ga. App. 539, 539, 512 S.E.2d 664, 665 (1999) (holding that the privilege of dismissal and renewal does not apply to void cases and that a suit is void if service is never perfected.); *Shy v. Faniel,* 292 Ga. App. 253, 256-57, 663 S.E.2d 841, 843-44 (2008) (holding that the dismissal of a second suit that was void because of a prior pending action did not constitute a dismissal).

### III.  CONCLUSION

Based on the foregoing, the Defendant's motion for summary judgment is **GRANTED**.  (Doc. 19).

**SO ORDERED**, this 11th day of February, 2016.

                          S/ Marc T. Treadwell
                          MARC T. TREADWELL
                          UNITED STATES DISTRICT COURT